UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11 Case No. 09-13412 (MG)
                                                        :
Metaldyne Corporation, et al.,                          :
                                                        :
       Debtors.                                      :   Jointly Administered
                                                        :
                                                        :
------------------------------------------------------- x
                                                        :
                                                        :
BDC FINANCE, L.L.C.,                                    :   Dist. Ct. Case No. 09-cv-07897-DLC
                                                        :
       Appellant,                                    :
                                                        :
   v.                                                  :
                                                        :
METALDYNE CORPORATION, et al., MD                       :
INVESTORS CORPORATION,                                  :
                                                        :
       Appellees.                                    :
------------------------------------------------------- x


**BRIEF OF APPELLEE MD INVESTORS CORPORATION
<u>IN OPPOSITION TO THE APPEAL OF BDC FINANCE, L.L.C.</u>**


                                      Joseph Serino, Jr.
                                      Christopher Marcus
                                      Matthew Solum
                                      KIRKLAND & ELLIS LLP
                                      601 Lexington Avenue
                                      New York, NY 10022
                                      Telephone:   (212) 446-4800
                                      Facsimile:    (212) 446-6460

                                      *Counsel to MD Investors Corporation*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

RESPONSE TO THE STATEMENT OF THE ISSUES .............................................................2

RESPONSE TO STATEMENT OF THE CASE ..........................................................................4

ARGUMENT..................................................................................................................................5

    I.    JPMorgan, As The Collateral And Administrative Agent, Had The Authority To Enter The Credit Bid And Distribute Black Diamond's Pro Rata Proceeds As Equity And Debt In NewCo. ........................................................5

    II.    Black Diamond's Requested Relief Is Equitably Moot. ..........................................6

    III.    The Auction And Sale Process and Bankruptcy Court Hearings In No Way Infringed On Black Diamond's Constitutional Rights..............................................8

    IV.    MDI Is Not Required To Provide Black Diamond With Evidence Of Value Of Its Equity Interest In NewCo....................................................................9

    V.    The Sale Order Is Not A *Sub Rosa* Plan. ...............................................................10

    VI.    MDI, The Debtors And All Other Parties Acted In Good Faith During the Auction And Sale Process.......................................................................................11

## TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Chrysler LLC*,
    405 B.R. 84 (Bankr. S.D.N.Y. 2009) ................................................................................ 5

*In re Chrysler LLC*,
    576 F.3d 108,118 (2d Cir. 2009) ................................................................................... 10

*In re GWLS Holdings, Inc.*,
    |No. 08-12430, 2009 Bankr. LEXIS 378 (Bankr. D. Del. Feb. 23, 2009) .......................... 5

*In re Lionel Corp.*,
    722 F.2d 1063 (2d Cir. 1983) .............................................................................. 3, 10, 11

MD Investors Corporation ("MDI" or "Appellee"), through its undersigned counsel, submits this brief as a joinder in support of Metaldyne Corporation and its affiliated debtors' (collectively, the "Debtors" or "Metaldyne") brief in opposition to the appeal of BDC Finance, L.L.C. ("Black Diamond" or "Appellant"). For the following reasons, in addition to those presented in the Debtors' opposition brief, MDI respectfully requests that this Court affirm the underlying orders of the bankruptcy court and deny the Appellant's requested relief.

## PRELIMINARY STATEMENT

Fashioning itself as the alleged victim of an unfair auction process that allegedly foreclosed its rights as a secured creditor and was conducted in the "dead of night" -- allegations which are all unquestionably false -- Black Diamond has obscured the fact that this appeal concerns one simple issue: whether the Credit Agreement and Security Agreement (defined below) authorized JPMorgan Chase Bank, N.A. ("JPMorgan"), as the administrative and collateral agent under those respective agreements, to credit bid security interests that it, and not Black Diamond, held in certain of the Debtors' assets. As the record from the bankruptcy court amply demonstrates, there is no question that JPMorgan was well within its rights to make a credit bid. Not only is such authority explicitly granted under the Credit and Security Agreements, but courts in this and other jurisdictions addressing substantially identical facts -- and substantially identical credit agreement provisions -- have reached the same conclusion as the bankruptcy court. *See infra*, § I.

Nevertheless, in the face of the bankruptcy court's findings that, among other things, the Debtors conducted a full and fair auction and that MDI's credit bid was the highest and best bid for the Debtors' assets, Black Diamond now seeks to hold the Debtors and "NewCo" (the resulting venture that owns substantially all of the Debtors' assets) hostage by demanding a 100% pay-out of its prepetition loan. Not only does Black Diamond's appeal lack substantive

merit, but it also comes too late. On October 16, 2009, the sale of the Debtors' assets to MDI closed, rendering the claims raised in Black Diamond's appeal equitably moot. Although Black Diamond proposes that this Court not unwind the transaction, but, instead, grant it a recovery from the proceeds of the sale, such relief would (i) be in direct contravention of the *pro rata* payment provisions under the Credit Agreement, (ii) violate the clear language of section 363(k) of the Bankruptcy Code, and (iii) eviscerate the benefit of the entire transaction structure flowing to the Debtors and all of their stakeholders. Simply put, there is no basis for the relief Black Diamond presently seeks. *See infra*, § II.

Thus, for the foregoing reasons, as well as those discussed in more detail below and presented in the Debtors' opposition brief, MDI respectfully requests that this Court deny Black Diamond's requested relief and affirm the orders of the bankruptcy court that (i) denied Black Diamond's emergency motion to stay the asset sale hearing (the "Emergency Motion") and (ii) approved the sale of substantially all of the Debtors' assets to MDI (the "Sale Order"). *See infra*, §§ III-VI.

## RESPONSE TO THE STATEMENT OF THE ISSUES

MDI joins in support of the Debtors' Response to the Statement of the Issues. In addition, MDI responds to Appellant's Statement of Issues as follows:

Appellant's first issue asks "[w]hether the bankruptcy court erred in approving a sale of assets under section 363(b) . . . ." (Appellant's Brief "Br." at 2-3). Pursuant to the credit and security agreements entered into on January 11, 2007 (the "Credit Agreement" and the "Security Agreement," respectively), Black Diamond authorized JPMorgan, as the collateral and administrative agent under those agreements, to hold the security interests in the Debtors' assets and exercise any and all rights of a secured party under applicable law, including the right to credit bid under section 363(k) of the Bankruptcy Code. The Debtors, in evaluating MDI's

2

credit bid, determined in their business judgment that it was the highest and best bid for the purchased assets. Accordingly, the bankruptcy court did not err in approving the sale of the Debtors' assets under sections 363(b) and (k) of the Bankruptcy Code.

Appellant's second issue asks "[w]hether the bankruptcy court erred in ruling that Black Diamond consented to the terms of the sale through the terms of the pre-petition loan documents (the "Loan Documents")." (Br. at 3). For the reasons stated in response to Appellant's first issue, the bankruptcy court did not err in ruling that Black Diamond consented to the terms of the sale through the terms of the Loan Documents.

Appellant's third issue asks "[w]hether the Sale Order, even if consistent with section 363 of the Bankruptcy Code and the Loan Documents, constitutes an impermissible *sub rosa* plan of reorganization." (Br. at 3). As the record below amply demonstrates, the bankruptcy court determined that the Debtors satisfied the Second Circuit's test in *Lionel*, finding numerous business justifications for the Debtors to enter into the sale with MDI, none of which came at the expense of any of Black Diamond's rights as a secured creditor. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). Accordingly, the Sale Order does not constitute an impermissible *sub rosa* plan of reorganization.

Appellant's fourth issue concerns "[w]hether the bankruptcy court's orders violated Black Diamond's constitutional rights." (Br. at 3). Evidence presented in the record below establishes that Black Diamond received:

- Notice of the sale motions, pursuant to which the Debtors sought approval of bidding procedures in connection with the sale of their assets;
- Notice of the auction and sale hearing;
- The order from the bankruptcy court approving the auction bidding procedures;

- The stalking horse bidder's asset purchase agreement against which MDI marked its credit bid; and

- Representation from sophisticated counsel who (i) attended both the auction and sale hearing, (ii) filed the Emergency Motion that was heard and denied by the bankruptcy court, and (iii) appeared and argued during the sale hearing.

Based on the above, there is no question that Black Diamond's due process rights were fully satisfied.

### RESPONSE TO STATEMENT OF THE CASE

Appellee MDI joins in support of the Debtor's Response to the Statement of the Case. In addition, MDI responds to Appellant's Statement of the Case as follows:

The Appellant improperly ignores the record before this Court and describes the auction and bidding process as one in which MDI, the Debtors and the unsecured creditors' committee were involved in bad faith negotiations intended to hide elements of the credit bid from Black Diamond and prevent it from participating in the auction process. (Br. at 4-8). Nowhere in the record, however, is there a single fact to support Black Diamond's assertion.

MDI's credit bid complied in all respects with the bidding and auction procedures approved by the bankruptcy court -- to which Black Diamond never objected. For instance, Black Diamond's allegations that the terms of the purchase agreement were not "disclosed until 10:00 p.m. on the night before the sale was approved" (Br. at 3) is belied by the fact that, as provided for in the bidding procedures, MDI marked its credit bid against the form of the stalking horse asset purchase agreement, which the bankruptcy court approved and which the Debtors made publicly available weeks before the auction for any party to view.

In addition, nearly two weeks prior to the auction, MDI solicited all term lenders, including Black Diamond, regarding the opportunity to participate in MDI's credit bid. In doing so, MDI notified all term lenders that it would credit bid the lenders' prepetition term claims for the Debtors' assets, and, in return, term lenders would receive equity and debt interest in NewCo. Although Black Diamond declined to participate in the credit bid, pursuant to the terms of the Loan Documents, it was still entitled to a *pro rata* share of equity and debt in NewCo upon the closing of the sale. Thus, Black Diamond's claims that it was shut out of the auction process are undercut by a clear and unambiguous record below.

## ARGUMENT

In addition to the argument set forth in the Debtors' opposition brief, which MDI hereby joins in support, MDI sets forth the following arguments in favor of dismissing Black Diamond's appeal:

**I.     JPMorgan, As The Collateral And Administrative Agent, Had The Authority To Enter The Credit Bid And Distribute Black Diamond's Pro Rata Proceeds As Equity And Debt In NewCo.**

Black Diamond would have this Court believe that the present appeal concerns a novel issue of credit bidding being taken "to a new and unlawful height." (Br. at 1). Black Diamond neglects to mention, however, the bankruptcy court's findings that several decisions have already addressed actions of an agent, such as JPMorgan, based on "substantively identical" credit agreement provisions -- and in each case the agent's actions were approved. *See* App. 976 (Memo Op. at 11) (discussing *In re Chrysler LLC*, 405 B.R. 84, 103 (Bankr. S.D.N.Y. 2009)); App. 977, 980 (Memo. Op. at 12 and n.12) (discussing *In re GWLS Holdings, Inc.*, No. 08-12430, 2009 Bankr. LEXIS 378 (Bankr. D. Del. Feb. 23, 2009)).

The issue on appeal is whether JPMorgan, as the administrative and collateral agent under the Credit and Security Agreements, had the authority to credit bid secured claims against

5

the purchase price for certain of the Debtors' assets. The answer is a resounding yes. As set forth at length in the Debtors' opposition brief, pursuant to sections 2.01 and 5.01 of the Security Agreement, JPMorgan, as the collateral agent, maintained all right, title and interests in the Debtors' assets for the benefit of Black Diamond and the other secured parties, as well as the authority to exercise any and all remedies afforded under applicable law which, in this instance, included the right to make a credit bid under section 363(k) of the Bankruptcy Code.

In addition, Black Diamond's argument that, as a secured creditor, it is entitled to adequate protection, is an improper application of section 363(e) of the Bankruptcy Code. By virtue of JPMorgan's credit bid, Black Diamond's claim against certain of the Debtors' assets was extinguished in exchange for equity and debt in NewCo. If this Court were to now provide Black Diamond with adequate protection in the form of a $3 million claim against the Debtors' estates, it would essentially allow Black Diamond to recover twice on account of its term loan claims. Section 363(e) of the Bankruptcy Code does not allow Black Diamond to receive both equity and debt in NewCo, as well a secured claim against the Debtors' estates.[1]

## II.     Black Diamond's Requested Relief Is Equitably Moot.

On October 16, 2009, MDI and the Debtors closed the sale of substantially all of the Debtors' assets. This sale was the product of significant and lengthy arm's-length, good faith negotiations by all of the parties involved and was determined by the bankruptcy court to be in

---

[1]     Black Diamond contends that the bankruptcy court, through the Sale Order, gave it "license to go to state court and bring suit . . . ." (Br. at 14). Nothing in the bankruptcy court's Sale Order provided such relief. Although the bankruptcy court stated in its Memorandum Opinion that "[n]othing in this Opinion or in the Sale Order is intended to limit or in any way impair [Black Diamond]'s rights or remedies with respect to the Agent, the Prepetition Term Lenders, or MDI, except that transferred assets are free and clear of any liens or interests", *see* App. 974 (Memo. Op. at n. 9), this provision, when read in its proper context, was limited to an issue that was not before the bankruptcy court, and certainly did not grant Black Diamond a license to bring a state court action or to collaterally attack any of the bankruptcy court's findings or conclusions, including, without limitation, that (i) JPMorgan properly made the credit bid, (ii) ample notice was provided to Black Diamond throughout the auction and sale process, (iii) Black Diamond was adequately represented by counsel throughout the auction and sale process, and (iv) MDI, the Debtors and the unsecured creditors' committee acted in good faith and did not collude.

the best interests of the Debtors' estates. Black Diamond chose not to seek a stay pending an appeal. Thus, Black Diamond cannot now unwind this transaction.

In light of the above, Black Diamond has concocted an alternative remedy requesting this Court to grant it relief "without unwinding the sale, because Black Diamond's claim was small enough that it would be more than covered by the cash components of the [NewCo] Bid." (Br. at 22). Black Diamond's proposed alternative relief, however, violates the Credit and Security Agreements, as well as the Bankruptcy Code, and undermines the entire structure of the sale transaction.

<u>First</u>, such relief would afford Black Diamond rights that are not to be found in the Credit or Security Agreements. Specifically, section 5.02 of the Security Agreement provides that payments to lenders must be *pro rata*. To give Black Diamond its own judicially-created claim against proceeds of the sale violates the Security Agreement and provides Black Diamond with a preferred status vis-à-vis all other lenders.

<u>Second</u>, granting Black Diamond's proposed relief would violate section 363(k) of the Bankruptcy Code. Section 363(k) authorizes a creditor to "offset" its claim against a sale's purchase price. It does not contemplate a credit bid <u>and</u> retention of a full claim against the Debtors' estates. This is a double recovery. Consequently, Black Diamond is not entitled to an additional $3 million secured claim against the proceeds from the sale. Section 363(k) of the Bankruptcy Code clearly prohibits such recovery.

<u>Third</u>, this sale was the result of vigorous, good-faith and arm's-length negotiations whereby all parties involved entered into the purchase agreement with a clear understanding of the benefits for which they bargained. Black Diamond's proposal, if granted, would deprive the Debtors' estate of an additional $3 million, thereby eviscerating the benefit for which other

7

stakeholders bargained and undermining the substantial effort expended by all parties in effectuating this sale.

### III. The Auction And Sale Process and Bankruptcy Court Hearings In No Way Infringed On Black Diamond's Constitutional Rights.

Contrary to Black Diamond's assertion that the auction process and MDI's credit bid occurred in the "dead of night" (Br. at 1), the record amply demonstrates that Black Diamond was provided with proper notice, represented by sophisticated counsel and had every opportunity to be heard.

For example, the record demonstrates that: (i) on June 25 and July 8, 2009, the bankruptcy court approved separate motions establishing bidding and auction procedures for the Debtors' assets, which authorized the Debtors to hold the auction on August 5 and 6, 2009, and specifically preserved the right of the Debtors' term lenders to credit bid; (ii) on July 23, 2009, the Debtors filed notice of the proposed stalking horse bid of HHI Holdings, LLC, which was approved by the bankruptcy court on July 28, 2009 and against which prospective bidders, including MDI, marked their bids; and (iii) on August 4, 2009, MDI filed a pleading (Docket No. 597) with the bankruptcy court describing its credit bid, which clearly stated that term lenders would receive equity and debt in NewCo in exchange for their prepetition claims. There is no question that Black Diamond received all of these notices.

In addition, on the morning of August 7, 2009, the bankruptcy court held a hearing on Black Diamond's Emergency Motion. At that time, Black Diamond presented argument in favor of adjourning the sale hearing. The bankruptcy court, after fully considering Black Diamond's arguments, denied the Emergency Motion. The bankruptcy court then held the sale hearing where Black Diamond was again given the opportunity to present its argument and question

witnesses.  On August 12, 2009, the bankruptcy court issued the Sale Order approving the sale of substantially all of the Debtors' assets.

Moreover, all term lenders, including Black Diamond, were represented throughout the Debtors' chapter 11 cases by counsel from Fried, Frank, Harris, Shriver & Jacobson, LLP, who, during the August 7, 2009 sale hearing, observed that "I'd be remiss if I didn't stand up because I spent it seems like months promising that a credit bid was coming" and then confirmed with the bankruptcy court that:

> In terms of process . . . whenever there was an opportunity available to the term lenders, *we ensured that every term lender got the notice of [the bid]*.  We sent it out, made sure that -- and the investors had it.  And Fried, Frank, individually also, when we were contacted with lenders and we got, sort of, the documents from them *to allow term lenders to participate*, we sent it out to all of the term lenders, whether they were on IntraLinks or not.  *So they all had it and -- to make sure that they had that opportunity*.

(App. 1088-1089) (emphasis added).  Black Diamond, in its individual capacity, also retained counsel from Bingham McCutchen LLP, who was present during the auction and the sale hearing.

In light of the irrefutable facts in the record before this Court, Black Diamond's allegation that the auction and bidding process was conducted in the "dead of night" without Black Diamond's knowledge is simply untrue.  Black Diamond was provided with ample notice throughout the entire auction and sale process, with additional opportunities to be heard on its Emergency Motion and during the sale hearing.  Accordingly, neither the bankruptcy court, nor any portions of the auction or sale process, deprived Black Diamond of its constitutional rights.

### IV.     MDI Is Not Required To Provide Black Diamond With Evidence Of Value Of Its Equity Interest In NewCo.

Black Diamond further complains that it has insufficient information regarding the capitalization or value of NewCo.  (Br. at 2, 8, 14, 20).  There is no bankruptcy law requirement,

9

however, that the bankruptcy court conduct a valuation hearing as to the value of the equity and debt that Black Diamond received in NewCo in exchange for its claims against the Debtors. Section 363 of the Bankruptcy Code requires the Debtors, in their business judgment, to determine that MDI's bid was the highest and best bid for the Debtors' assets, and in the best interests of the Debtors' estates. Upon making such a determination, the bankruptcy court authorized the sale under section 363 of the Bankruptcy Code.

## V.     The Sale Order Is Not A *Sub Rosa* Plan.

Black Diamond's argument that the sale of the Debtors' assets to MDI constitutes an impermissible *sub rosa* plan of reorganization is without merit. As the Second Circuit stated in *In re Chrysler LLC*, 576 F.3d 108,118 (2d Cir. 2009), whether a sale pursuant to section 363(b) of the Bankruptcy Code constitutes an impermissible *sub rosa* plan of reorganization "boil[s] down to the complaint that the [s]ale does not pass the discretionary, multifarious" test set forth in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983). This test requires that the court apply a number of factors[2] to the transaction at issue and determine whether "from the evidence presented before [the Court] at the hearing [that there is] a good business reason" to approve the transactions. *Chrysler*, 576 F.3d at 117-18 (citing *Lionel*, 722 F.2d at 1071) (other internal citations omitted). Such a finding by the bankruptcy court is "an adequate rebuttal" to the argument that the sale is a *sub rosa* plan. *Chrysler*, 576 F.3d at 118.

---

[2]    In *Lionel*, the Second Circuit articulated a nonexclusive list of factors that the bankruptcy court should consider when ruling on an application to sell property under section 363(b) of the Bankruptcy Code. These factors include "the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value." *Lionel*, 722 F.2d at 1071.

Here, the record demonstrates that the bankruptcy court specifically found that this sale satisfied the *Lionel* test. *See* App. 968 (Memo. Op. at 3). Indeed, the bankruptcy court stated that:

> [T]here is a sound business reason for the sale of substantially all of the Debtors' assets at this time. The evidence at the [sale] hearing showed that the value of the Debtors' business is declining rapidly and that if a sale is not consummated at this time, there may be even less available for creditors. In addition, the evidence showed that the consideration MDI is offering . . . is far in excess of any other offer for the Debtors' assets on the table and far in excess of the liquidation value of those same assets. Lastly, the evidence showed that time for consummating the sale is of the essence, because the DIP Lenders are not obligated—and in fact have refused—to fund these cases beyond the next few weeks. The totality of the circumstances presented here easily supports approving the sale at this juncture.

App. 980-81 (Memo. Op. at 15-16). Thus, in light of the fact that Black Diamond has not -- and cannot -- provide any evidence to refute the bankruptcy court's findings, this Court should reject Black Diamond's argument that the Sale Order constitutes a *sub rosa* plan of reorganization.

## VI. MDI, The Debtors And All Other Parties Acted In Good Faith During the Auction And Sale Process.

Black Diamond argues that the Sale Order should not be given the benefit of section 363(m) of the Bankruptcy Code on the basis that MDI's credit bid was purportedly "fashioned for the purpose of squeezing-out a dissident and securing committee support, rather than maximizing cash for the assets." (Br. at 20). Black Diamond, however, does not -- and cannot -- cite to a single fact in the record that supports a bad faith finding. To the contrary, the record below provides clear evidence that the auction and bidding process was conducted in good faith and that MDI, the Debtors, and the unsecured creditors committee all acted in good faith throughout the process. *See, e.g.*, App. 1422-23 (Declaration of Michael Macakanja in Support of Debtors' Request for an Order Approving the Sale of Substantially All of the Assets of the Debtors' Free and Clear of All Liens, Claims, Interests and Other Encumbrances, at ¶¶ 33-38).

Accordingly, there is simply no basis for this Court to find that the bankruptcy court was clearly erroneous when it determined that MDI, the Debtors and the unsecured creditors' committee all acted in good faith.

## CONCLUSION

For all of the foregoing reasons, MDI respectfully requests that this Court affirm the bankruptcy court's orders, deny Black Diamond's requested relief and for such other and further relief as is just and appropriate.

Dated: New York, New York
       October 19, 2009

Respectfully submitted,

/s/ Matthew Solum
Joseph Serino, Jr.
Christopher Marcus
Matthew Solum
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-6460

*Counsel to MD Investors Corporation*