UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
In re                                   :
METALDYNE CORPORATION, et al.,          :
                        Debtor.         :
                                        :
----------------------------------------:       09 Civ. 7897 (DLC)
                                        :
BDC Finance, L.L.C.,                    :       OPINION & ORDER
                        Appellant,      :
                                        :
            -v-                         :
                                        :
METALDYNE CORPORATION, et al., MD       :
INVESTORS CORPORATION                   :
                        Appellees.      :
----------------------------------------X

Appearances:

For Appellant:

Steven Wilamowsky
Cassandra Genevieve Aquart
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022

For Appellee Metaldyne Corporation:

Michael David Silberfarb
Ryan T. Routh
Jones Day
222 East 41st Street
New York, NY 10017

Robert Hamilton
Jones Day
325 H. McConnell Boulevard
Suite 600
Columbus, OH 43215-2673

For Appellee Official Committee of Unsecured Creditors of
Metaldyne Corporation:

Mark David Silverschotz
Reed Smith
599 Lexington Avenue
New York, NY 10022

For Appellee MD Investors Corporation:

Christopher Marcus
Matthew Osborn Solum
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022


DENISE COTE, District Judge:

        This bankruptcy appeal arises out of the financial collapse

of the Metaldyne Corporation ("Metaldyne"), a metal components

manufacturer and parts supplier for the global light vehicle

market.  MD Investors Corporation ("MDI"), an investment vehicle

formed by two hedge funds that were also prepetition term

lenders, purchased substantially all of Metaldyne's assets in an

auction.  Another prepetition term lender, BDC Finance L.L.C.

("Black Diamond"), appeals from the order approving the sale of

Metaldyne's assets to MDI "free and clear of all liens, claims,

encumbrances, and other interests of any kind or nature" ("Sale

Order"), entered on August 12, 2009 by United States Bankruptcy

Judge for the Southern District of New York Martin Glenn.  For

the following reasons, the Sale Order is affirmed.

The debtors in this action are Metaldyne and Metaldyne Intermediate Holdco, Inc. (collectively "Debtors"). Black Diamond held approximately $3.5 million of the $425 million in outstanding secured debt issued by Debtors.

Black Diamond grounds its challenge to the Sale Order in two principal arguments. It contends that the bankruptcy court erred in concluding that: (1) Black Diamond had consented to the sale through the prepetition loan documents; and (2) § 363 of the Bankruptcy Code permitted the court to force a secured lender to accept an equity interest in exchange for liens in unsold collateral. On this basis, it seeks to revise a crucial term of the sale. The chronology of Metaldyne's bankruptcy and relevant proceedings are summarized here.

1. Auction

Metaldyne filed for bankruptcy on May 27, 2009. At the time, its lenders (the "Term Lenders") held approximately $425 million in secured claims (the "Prepetition Debt").

Metaldyne was one of the fifty largest auto parts suppliers in North America, consisting principally of two business units, the powertrain segment ("Powertrain Assets") and the chassis segment ("Chassis Assets"). Pursuant to the conditions of its postpetition lending facility (the "DIP Financing"), Metaldyne

was required to pursue a sale of its assets within 60 days.  The
bankruptcy court approved bidding procedures authorizing Debtors
to solicit purchasers for the Powertrain and Chassis Assets.
Assuming there were multiple potential purchasers, the
bankruptcy court authorized Debtors to hold an auction for each
class of asset.  Metaldyne formed a special committee (the
"Special Committee") comprised of two independent directors to
help it evaluate the bids.

Three "Qualified Bidders" emerged for the Powertrain
Assets: (1) Hephaestus Holdings, Inc. ("HHI"); (2) ACOF
Operating Manager III, LLC ("Ares"); and (3) MDI.[1]  HHI and Ares
bid solely for the Powertrain Assets whereas MDI bid for both
the Powertrain and Chassis Assets, as well as two other
components of the Debtors' business.  Only one Qualified Bidder
emerged for the Chassis Assets.

Debtors held the auction over the course of two days early
in August 2009.  After several rounds of bidding, the Special
Committee determined that the MDI bid was the highest and best
offer.

---

[1] By orders on June 25, 2009 and July 8, 2009, the bankruptcy
court approved the bidding procedures.  These orders define
"Qualified Bidder."

2. The Purchase Agreement

Debtors and MDI entered into a purchase agreement (the "Purchase Agreement") under which MDI purchased substantially all of Metaldyne's assets in consideration for a "credit bid" of the full amount of the Term Lender's claims, $39.5 million for the non-credit bid assets, $8.5 million in administrative claims, assumption of a 15 million Euro note, release of all liens on assets not included in the sale, and $2.5 million to facilitate the liquidation of the Debtors' remaining assets and to pursue certain claims and causes of action for the benefit of creditors. In re Metaldyne, 409 B.R. 671, 674 (Bankr. S.D.N.Y. 2009).

The rights of the Term Lenders were governed by both a credit agreement (the "Credit Agreement") and a security agreement ("the Security Agreement," and with the Credit Agreement, collectively, the "Loan Documents").[2] By the terms of these documents, each Term Lender "irrevocably appointed" JPMorgan Chase Bank, N.A. (the "Agent") as both its Administrative Agent and its Collateral Agent. As such, the Agent possessed the authority to act on behalf of, and exercise the rights of, each Term Lender upon an event of default. The commencement of proceedings under chapter 11 of the Bankruptcy

---

[2] The relevant portions of the Loan Documents are quoted at length in In re Metaldyne, 409 B.R. at 674-77.

Code qualified as one such event. Pursuant to these terms, the Agent credit bid the full amount of the Prepetition Debt, notwithstanding the opposition of any individual Term Lender. The assets purchased by the credit bid were then placed in a new company ("NewCo"). The Term Lenders each received a pro rata equity share in NewCo.

3.  Sale Hearing and Sale Order

On August 7, 2009, Debtors requested the bankruptcy court's authorization to enter into the MDI transaction. Black Diamond objected. After denying Black Diamond's emergency motion to adjourn the hearing, the bankruptcy court heard argument regarding the merits of the sale.

Black Diamond objected to the sale on two grounds. Its first objection centered on the interpretation of the Loan Documents. It argued that the Loan Documents stipulated that only Black Diamond could credit bid its claim. Alternatively, it claimed that the Loan Documents did not authorize the Agent to credit bid Black Diamond's claim without its prior written consent. Second, Black Diamond objected to receiving equity in NewCo, an enterprise whose capital structure and governance provisions were unclear.

Debtors offered into evidence the declarations of several individuals critical to the bidding and sale transaction. Black

Diamond had the opportunity to cross examine each of the individuals.  The hearing focused on the declaration of Michael Macakanja, a director at Lazard Freres & Co., who was a financial advisor to Metaldyne during the course of the Chapter 11 proceedings.  He described the bidding process, discussed the terms of the Purchase Agreement, and explained how he determined which of the bids provided the best value for Metaldyne's various constituencies.

Ultimately, the court rejected Black Diamond's objections and approved the sale.  The court concluded that Black Diamond had, pursuant to the Loan Documents, delegated authority to the Agent to credit bid the Debtors' assets.  It also rejected Black Diamond's second objection, characterizing it as an inter-creditor dispute over which it did not have jurisdiction.  On the basis of these conclusions about the Loan Documents, the bankruptcy court approved the Sale Order on August 12, 2009.

The Sale Order found that the bidding procedures had provide any entity a "full, fair, and reasonable opportunity" to purchase the assets.  It noted that the Debtors had demonstrated "sound business purposes and justifications" for the sale, and that MDI was a "good faith purchaser."

The court also deemed that the sale was in the best interests of all parties in interest, including the Debtors, creditors, and their estates.  Finally, the Sale Order cautioned

that the "validity of the Sale Transaction and transfer of the assets to [MDI]" would not be disturbed on appeal "unless [the Sale Order] is duly stayed pending such appeal." No party sought a stay of the Sale Order.

On September 15, 2009, Black Diamond appealed the judgment of the bankruptcy court.[3] It contends that the bankruptcy court committed clear error by: (1) approving the NewCo bid and sale transaction over its objection; (2) concluding that Black Diamond consented to the sale through the Loan Documents; (3) approving an impermissible sub rosa plan of reorganization; and (4) finding that the Debtors acted in good faith. Additionally, it contends that the bankruptcy court's order violated Black Diamond's constitutional right to be protected from a deprivation of property without due process. In its appeal, Black Diamond asks this Court to "reverse the Sale Order to the extent it forced Black Diamond to take equity in respect of its secured claim and stripped it of its lien in unsold collateral, and remand with instructions that the lien shall attach, as a priority lien to all cash proceeds of the sale." It claims that this remedy would not require "unwinding the sale." On October

---

[3] The briefing on appeal was completed on November 23, 2009. On December 10, 2009, Black Diamond filed a motion to expedite its appeal, requesting that the Court rule on the appeal before February 23, 2010. This Opinion moots that motion.

28, 2009, Debtors filed a motion to dismiss Black Diamond's appeal.  This motion was fully briefed on November 23, 2009.

DISCUSSION

District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a), and may "affirm, modify, or reverse a bankruptcy judge's judgment, order or decree."  Fed. R. Bankr. P. 8013.  On appeal, the legal conclusions of the bankruptcy court are reviewed de novo, but the findings of fact are reversed only when they are "clearly erroneous."  Id.; AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.), 493 F.3d 82, 85 (2d Cir. 2007).  While the bankruptcy court's findings of fact are not conclusive on appeal, "the party that seeks to overturn them bears a heavy burden."  H & C Dev. Group, Inc. v. Miner (In re Miner), 229 B.R. 561, 565 (2d Cir. 1999).  The reviewing court must be left with a "definite and firm conviction" that a mistake has been made.  Ortega v. Duncan, 333 F.3d 102, 107 (2d Cir. 2003) (citation omitted).  Mixed questions of law and fact are reviewed "either de novo or under the clearly erroneous standard depending on whether the question is predominantly legal or factual."  Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.), 554 F.3d 300, 316 n.11 (2d Cir. 2009) (citation omitted).

Black Diamond's failure to obtain a stay of the Sale Order is fatal to its appeal so long as MDI was a purchaser in good faith. As a consequence, MDI's status as a good faith purchaser will be addressed first.

1. Good Faith Purchaser

Black Diamond asserts that the bankruptcy court erred in its factual determination that MDI was a good faith purchaser. The Bankruptcy Code does not define "good faith purchaser," but the Second Circuit has adopted the traditional equitable definition: "one who purchases the assets for value, in good faith and without notice of adverse claims." Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d Cir. 1997) ("Gucci II") (citation omitted). When assessing a purchaser's good faith, courts examine "the integrity of his conduct during the course of the sale proceedings; where there is lack of such integrity, a good faith finding may not be made." Id. Good faith is absent where a purchaser engaged in "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Id. (citation omitted). This determination "is a mixed question of law and fact." Id.

Black Diamond does not challenge the bankruptcy court's choice of legal standard. It contends, instead, that MDI

"schemed with the Debtors . . . to freeze out dissenters and cash bidders at the auction." It claims that the bankruptcy court merely made "rote" findings of good faith.

First, Black Diamond did not raise the issue of good faith during the sale hearing. As a result, it may not pursue the claim on appeal. See Adelphia Bus. Solutions, Inc. v. Adelphia, 482 F.3d 602, 607 (2d Cir. 2007). Furthermore, while Black Diamond asserts that the bankruptcy court's findings of good faith "are contradicted by the undisputed record," it fails to cite to any portion of the record supporting that assertion. The bankruptcy court heard testimony from individuals involved with the transaction. Cross examination of these witnesses failed to unearth evidence of fraud, collusion, or any impropriety. Black Diamond's perfunctory allegations are insufficient to show that the court's conclusion was clearly erroneous. The bankruptcy court's determination of MDI's good faith status is therefore affirmed.

2. Statutory Mootness

Because it did not obtain a stay of the Sale Order, Black Diamond's appeal is statutorily moot under § 363(m) of the Bankruptcy Code. Under § 363(m),

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect

> the validity of a sale . . . under such authorization
> to an entity that purchased . . . such property in
> good faith . . . <u>unless such authorization and such</u>
> <u>sale . . . were stayed pending appeal</u>.

11 U.S.C. § 363(m) (emphasis supplied).  Pursuant to this section, "appellate jurisdiction over an <u>unstayed</u> sale order issued by a bankruptcy court is statutorily limited to the narrow issue of whether the property was sold to a good faith purchaser."  <u>Licensing by Paolo, Inc. v. Sinatra (In re Gucci)</u>, 105 F.3d 837, 839 (2d Cir. 1997) ("<u>Gucci I</u>").

Limiting appellate jurisdiction over unstayed sale orders to the issue of good faith "furthers the policy of finality in bankruptcy sales and assists the bankruptcy court to secure the best price for the debtor's assets."  <u>Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)</u>, 111 F.3d 269, 272 (2d Cir. 1997) (citation omitted).  "[W]ithout this assurance of finality, purchasers could demand a large discount for investing in a property that is laden with the risk of endless litigation as to who has rights to estate property."  <u>Gucci II</u>, 126 F.3d at 387.

Despite the fact that the Sale Order warned any party wishing to appeal that the validity of the sale would not be disturbed unless a party sought a stay order, Black Diamond failed to seek a stay.  On October 16, 2009, the sale closed.  As a result, the only issue on appeal is whether the bankruptcy

court committed reversible error in finding that MDI was a good faith purchaser. As discussed above, the bankruptcy court did not commit reversible error in determining MDI's good faith status.

Black Diamond seeks to escape the limitations imposed by § 363(m) by arguing that it does not challenge the sale itself, but the allocation of the assets of the sale, which delivered Metaldyne's assets to MDI free and clear of liens. This is a specious distinction. See In re Lehman Brothers Holdings, Inc., 415 B.R. 77 (S.D.N.Y. 2009) (rejecting a similar argument). Judge Glenn found that "MD Investors would not have entered into the [Purchase] Agreement . . . if the sale of the Assets were not free and clear of all Claims relating to the Assets . . . or in the future could be liable for any such Claims."

Consequently, statutory mootness forecloses Black Diamond's arguments beyond the issue of MDI's good faith. Having sought no relief that stops short of challenging the validity of the entire sale, see Gucci I, 105 F.3d at 839-40 & n.1, Black Diamond's request for relief is moot under § 363(m).[4]

_____

[4] This appeal fails for another reason as well. Since Black Diamond failed to obtain a stay and allowed a comprehensive change in circumstances to take place, the appeal is equitably moot. Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 952-53 (2d Cir. 1993); Official Comm. Of Unsecured Creditors of LTV Aerospace and Def. Co. v. Official Comm. Of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.), 988 F.2d 322, 325 (2d Cir. 1993); see also Deutsche Bank

CONCLUSION

The bankruptcy court's August 12, 2009 Sale Order is

affirmed.  The appeal is dismissed.

SO ORDERED:

Dated:  New York, New York
        December 29, 2009

_____
DENISE COTE
United States District Judge

Comm. Of Unsecured Creditors of LTV Steel Co. (In re Chateaugay
Corp.), 988 F.2d 322, 325 (2d Cir. 1993); see also Deutsche Bank
AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber
Network, Inc.), 416 F.3d 136, 144-45 (2d Cir. 2005).